IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHELLY GROSS,** | : | **Civil No. 1:21-CV-2188** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PETER CAIRO,** | : | |
| | : | |
| **Defendant.** | : | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

Before the court is Defendant Peter Cairo's motion to dismiss Plaintiff Shelly Gross's claim under 42 U.S.C. § 1983 for failure to state a claim. (Doc. 9.) For the reasons set forth below, the motion will be denied.

## I.    BACKGROUND

This case arises from an incident that occurred in Harrisburg, Pennsylvania, on January 10, 2020 between Plaintiff Shelly Gross and Defendant Peter Cairo, an employee of the Dauphin County Adult Probation Services Division. (Doc. 1 ¶¶ 2–4.) According to the complaint, at about 2:00 p.m., Gross received a call from a neighbor who asked her to check on her next-door neighbor, Mr. Jacobs. (*Id.* at ¶ 4, 5.) When Gross knocked on Jacobs's door, Cairo opened it from inside the home and was "immediately rude and aggressive demanding to know what Plaintiff wanted." (*Id.* at ¶¶ 6–7.) Gross explained to Cairo that she had been asked to check on Jacobs, and when Gross moved toward the doorway, Cairo "violently struck" her

1

"in the stomach." (*Id.* at ¶¶ 8–9.) Gross, who was thirteen weeks pregnant at the time, experienced stomach pain and immediately went to the emergency room, where it was determined that she had suffered placental hemorrhaging. (*Id.* at ¶¶ 10–11.)

In December 2021, Gross filed a complaint against Cairo in his individual capacity, alleging a § 1983 claim and tort claims under state law. (Doc. 1.) Cairo has moved to dismiss the § 1983 claim for failure to state a claim. The motion has been fully briefed and is ripe for review.

## II.   <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "When reviewing a 12(b)(6) motion, we 'accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc.*, 783 F. App'x 159, 162 (3d Cir. 2019) (quoting *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96–97 (3d Cir. 2018)). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). But "[t]he court is not required to draw

unreasonable inferences" from the facts. 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id*. at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id*. Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

### III.   DISCUSSION

Cairo's motion contends that the complaint fails to allege a § 1983 claim. Section 1983 offers private citizens a means to redress violations of federal law committed by state officials. *See* 42 U.S.C. § 1983. To state a § 1983 claim, the plaintiff must demonstrate that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Cairo's motion will be denied because the complaint

adequately alleges both elements of the § 1983 claim and Cairo has not established that he is entitled to qualified immunity.

### A. The complaint adequately alleges that Gross was seized.

Cairo's motion argues that the complaint fails to allege that Gross was seized, as is necessary to state a Fourth Amendment claim. The Fourth Amendment protects the right of "people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. In order to state a claim for a Fourth Amendment violation, the plaintiff must allege that the actions of the defendant: (1) constituted a seizure; and (2) were unreasonable in light of the circumstances. *See Estate of Smith v. Marasco*, 318 F.3d 497, 515 (2003). The Fourth Amendment "governs all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Smith*, 575 F.3d 308, 312 (3d Cir. 2009) (quoting *United States v. Mendenhall*, 446 U.S. 544, 551 (1980) (internal quotation marks omitted)).

A person is seized "when the officer by means of physical force or show of authority, terminates or restrains his freedom of movement . . . through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (quotation marks, emphasis, and internal citations omitted). In fact, "the application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued." *Torres v. Madrid*, 141 S. Ct. 989, 1003 (2021);

*United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) ("A seizure occurs when there is either (a) 'a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful,' or (b) submission to 'a show of authority.'") (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). "The appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to restrain . . . . While a mere touch can be enough for a seizure, the amount of force remains pertinent in assessing the objective intent to restrain." *Torres*, 141 S. Ct. at 998–99.

Accepting the complaint's factual averments as true and drawing all reasonable inferences in Gross's favor, the complaint adequately alleges a seizure. The complaint's assertion that Cairo struck Gross with enough force to cause severe pain and hemorrhaging sufficiently alleges that Cairo manifested an objective intent to restrain Gross's movements. Courts generally find that a seizure occurred where, as here, an application of physical force temporarily immobilizes or causes injury. *See El v. City of Pittsburgh*, 975 F.3d 327, 332, 336 (3d Cir. 2020) (seizure occurred where officer grabbed the plaintiff by the wrist and neck, slammed him into a wall, and took him to the ground, which bruised the plaintiff's hip); *Acevedo v. Canterbury*, 457 F.3d 721, 724–25 (7th Cir. 2006) (seizure occurred where an officer rushed toward the plaintiff and struck him "hard in the side of the head with his fist," causing him "to reel backwards and fall to the ground"); *Slusher v. Carson*, 540 F.3d

449 (6th Cir. 2008) (seizure occurred where an officer grabbed the plaintiff's hand, which exacerbated an existing injury and impaired the use of her hand for months); *Kyle v. Bedlion*, 177 F. Supp. 3d 380, 392 (D.D.C. 2016) (seizure occurred where an officer grabbed the plaintiff and threw her to the ground). Moreover, any inference from the allegations that Cairo merely intended to prevent entry in the home would be drawn impermissibly in Cairo's favor, and the fact that Gross was not subdued by the punch or unable to immediately seek medical care without assistance in no way precludes a finding that she was seized.[1] *See Torres*, 141 S. Ct. at 1003; *Brown*, 448 F.3d at 245. The complaint therefore states a Fourth Amendment claim.[2]

---

[1] Cairo cites to cases holding that "keep out orders" or escorted removals are not seizures because they do not demonstrate "intent to restrain." (See Doc. 10 at 11–12.) These cases are distinguishable because the complaint alleges that Cairo forcefully punched Gross, not that he merely applied insubstantial force or threatened force to prevent her entry. See *Abuomar v. Commonwealth of Pa. Dep't of Corr.*, No. 14-CV-01036, 2017 WL 2972825 (M.D. Pa. July 12, 2017), *aff'd* 754 F. App'x 102 (3d Cir. 2018) (no physical contact); *Smith v. Dep't of General Servs.*, 181 F. App'x 327, 330 (3d Cir. 2006) (grabbed elbow while escorting from room); *Ostrowski v. Killion*, No. 14-CV-1727, 2015 WL 5286622, at *6 (M.D. Pa. Sept. 10, 2015) ("placed one or both hands" on plaintiff while escorting from courtroom); *Robinson v. Town of Colonie*, 878 F. Supp. 387, 402 (N.D.N.Y. 1995) (threats of arrest). Furthermore, it is not significant whether Cairo in fact only intended to keep Gross out because the "intent to restrain" is an objective determination. *See United States v. Pratt*, 355 F.3d 1119, 1124 (8th Cir. 2004) ("An officer's uncommunicated subjective intent is irrelevant to the question of whether an individual has been seized.") (citing *Mendenhall*, 446 U.S. at 554 n.6)).

[2] While Cairo's motion does not argue that any seizure of Gross was reasonable, the court finds that the complaint contains sufficient facts to support that Gross was unreasonably seized. A brief seizure is reasonable if "the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 52 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Even if justified at its inception, a seizure may nevertheless be unreasonable if the officer uses more force than is necessary under the circumstances. *See Estate of Smith*, 318 F.3d at 515. To assess whether a particular use of force is reasonable, the Third Circuit considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight,"

The court further finds that the complaint adequately alleges a Fourteenth Amendment substantive due process claim, as an alternative to the Fourth Amendment claim. Although Fourteenth Amendment analysis is generally inapplicable if the conduct is "covered" by the Fourth Amendment, *see Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998), the court's finding that a seizure was adequately alleged depends on an inference in Gross's favor that may or may not be borne out by discovery. Should discovery reveal that she was not seized, Gross may nevertheless proceed on her § 1983 claim based on the alleged Fourteenth Amendment violation. To state a substantive due process claim, the plaintiff must allege that (1) the particular interest at issue is protected by the Fourteenth Amendment, and (2) the government's deprivation of that protected interest shocks the conscience. *Connection Training Serv. v. City of Phila.*, 358 F. App'x 315, 319

---

as well as physical injury to the plaintiff, "the possibility that [the suspect is] violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989), *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997), *abrogated on other grounds* by *Curley v. Klem*, 499 F.3d 199, 209–11 (2007)). There is no indication in the complaint that Cairo had any reason to suspect that Gross committed a criminal offense. Nor does it appear from the face of the complaint that Gross posed any true threat to Cairo, particularly considering that Gross was visibly pregnant and took the time to explain her intention prior to moving toward to the door. Despite the lack of threat, Cairo's alleged use of force, however brief, caused placental hemorrhaging and necessitated additional obstetric care. The sole factor that weighs in Cairo's favor is that he alone had to simultaneously contend with Jacobs and Gross, but there is no indication that Jacobs was not compliant during the home check. The complaint's allegations permit a reasonable inference that Gross's seizure was unreasonable.

(3d Cir. 2009). Cairo's punch to Gross's stomach implicated her constitutional liberty interests by invading her bodily integrity, *see K.S.S. v. Montgomery Cnty. Bd. of Comm'rs*, 871 F. Supp. 2d 389, 398 (E.D. Pa. 2012), and the alleged facts are such that the court, at this early stage of litigation, cannot determine as a matter of law that Cairo's conduct did not shock the conscience. *Lewis*, 523 U.S. at 850–53 (contemplating a context-specific inquiry to determine whether conduct shocks the conscience when culpability for the action falls on the spectrum between negligence and intentional conduct that is intended to harm).

### B. Cairo has not established that he is entitled to qualified immunity.

Cairo also argues that he is entitled to qualified immunity, which shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). Qualified immunity requires a two-prong inquiry: "(1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether the law was clearly established at the time of the violation." *Jefferson v. Lias*, 21 F.4th 74, 80 (3d Cir. 2021) (internal citation omitted).

To determine whether a right is clearly established, the court must first "define the right allegedly violated at the appropriate level of specificity . . . in light of the

specific context of the case." *Jefferson*, 21 F.4th at 81 (quoting *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021)). Then, the court must examine existing case law to determine whether the "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "Existing precedent is sufficient to place a constitutional question beyond debate and to defeat qualified immunity only if it is controlling authority in the relevant jurisdiction, or if a robust consensus of cases of persuasive authority in the Court of Appeals has settled the question." *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 719 (3d Cir. 2018) (internal citations, quotation marks, and brackets omitted). Absent such case law, only "an obvious case" will defeat qualified immunity. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017) (The *Graham* factors alone do not "create clearly established law outside an obvious case" because *Graham* is "cast at a high level of generality.") (citing *Plumhoff v. Rickard*, 572 U.S. 765, 779).

Gross's allegations are analogous to the facts presented in *El v. City of Pittsburgh*, 975 F.3d 327, 332, 336 (3d Cir. 2020), and although the decision post-dates the circumstances alleged in the complaint, the Third Circuit's grounds for denying qualified immunity in *El* apply with equal force here. In *El*, a police officer suspected the two plaintiffs, brothers Will and Beyshaud El, had committed a marijuana offense. 975 F.3d at 332. She radioed for back up and initiated an

investigative stop, ordering the men to sit on the stoop of a vacant storefront. *Id*. During the stop, the Els voluntarily emptied their pockets to show that they did not have marijuana. *Id*. However, when only Will could produce identification, the officer began to suspect that Beyshaud had made an underage tobacco purchase. *Id*. She returned Will's identification by tossing it on the ground and then stepped on it when Beyshaud tried to retrieve it. *Id*. The brothers complained that they were being harassed, and a newly arrived back-up officer, Officer Welling, retorted, "[D]o you want to know what it feels like to be harassed?" *Id*. In response, Will stood up and began arguing and gesticulating. *Id*. When Will took two steps toward the other officers, Officer Welling "grabbed [him] . . . by his wrist and neck and slammed him back into the wall of the vacant storefront . . . and on to the pavement." *Id*. Beyshaud came to Will's defense and was tased. *Id*. The two brothers were then arrested, and upon release from jail, Will sought emergency medical services and was found to have a bruised hip. *Id*.

Relying on a robust consensus of persuasive authority from sister circuits, the Third Circuit found that Officer Welling was not entitled to qualified immunity for his use of excessive force. *See id*. at 336. The Third Circuit held that "an unarmed individual who is not suspected of a serious crime—including one who is verbally uncooperative or passively resists the police" has a clearly established right not to be subjected to non-trivial force. *Id*. (citing *Deville v. Marcantel*, 567 F.3d 156, 161

(5th Cir. 2009) (per curiam) (no qualified immunity where officers conducting a traffic stop pulled the plaintiff out of her car, threw her up against it, and handcuffed her when she had argued with officers, rolled up her windows, and refused to get out of the car); *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 683–84 (6th Cir. 2006) (no qualified immunity where officers pepper sprayed, struck with a stick, and took a knee to the back of a misdemeanant who hid to evade arrest and disobeyed instructions to come out); *Montoya v. City of Flandreau*, 669 F.3d 867, 869 (8th Cir. 2012) (no qualified immunity where an officer responding to a domestic dispute took a woman to the ground by sweeping her legs out from under her when she had made a fist and stepped toward the other disputant); *Thornton v. City of Macon*, 132 F.3d 1395, 1398 (11th Cir. 1998) (per curiam) (no qualified immunity where officers, while retrieving a woman's property from the home of her former co-habitant, threw him to the floor, handcuffed him, dragged him outside, and shoved him into a police car when he had refused to return the property and told them to leave)).

In this case, Cairo is not entitled to qualified immunity because the circumstances alleged in the complaint provided even less justification for Cairo to punch Gross than Officer Welling had to use a similar amount of force in *El*. As with the unarmed *El* brothers, there is no indication that Gross had any weapons. However, unlike the *El* plaintiffs, who were suspected of a minor offense and were ultimately convicted of summary offenses stemming from the altercation, Cairo at

most suspected that Gross was on the verge of committing a misdemeanor trespass to property and there is no indication that she was charged or convicted of any offense from the incident. Even if Gross's movement toward the door after explaining her benign intentions could be characterized as resistance, her actions are even more passive than Will's standing up and taking steps toward the officers during a dispute. Although Officer Welling's force in taking Will to the ground likely exceeds Cairo's punch, the extent of Gross's injury appears more severe than Will's bruised hip.

Finding no compelling factual distinctions between *El* and the complaint's allegations, the court therefore concludes that the same precedents that clearly established the *El* plaintiff's rights in 2013 also provided notice to Cairo in 2020 that punching Gross under these circumstances constituted unlawfully excessive force. Accordingly, Cairo is not entitled to qualified immunity at this juncture.

## IV.   <u>CONCLUSION</u>

For the reasons explained above, the court will deny Defendant Peter Cairo's motion to dismiss. (Doc. 9.) An appropriate order shall follow.

*s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: September 15, 2022